IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re<br>STEVEN & DONNA WATKINS,<br><br>Debtors. | Chapter 7<br>Case No. 07-6317-PHX-SSC<br>**MEMORANDUM DECISION ON UNITED STATES TRUSTEE'S MOTION TO DISMISS** |

## I. INTRODUCTION

This matter comes before the Court pursuant to the United States Trustee's "Motion to Dismiss Case Under Section 707(b)(2) or Section 707(b)(3)" (the "Motion to Dismiss") filed with the Court on February 29, 2008. Steven and Donna Watkins, the Debtors herein, filed and served their response ("Response") to the Motion to Dismiss on March 12, 2008, and the United States Trustee filed her reply ("Reply") on March 28, 2008.

After conducting a hearing in the matter on April 17, 2008, and taking into consideration the arguments of each of the parties, the documents filed, and the entire record before the Court, the Court has set forth in this decision its findings of fact and conclusions of law pursuant to Fed.R.Civ.P. 52, Bankruptcy Rule 7052. The Court has jurisdiction over this matter, and this is a core proceeding.[1] 28 U.S.C. §§ 1334 and 157 (West 2007).

---

**1.** The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"),Pub. L. 109-8, 119 Stat. 23 (Apr. 20, 2005) must be utilized to resolve the issues in this matter, since this case was filed after October 17, 2005.

## II. FACTUAL BACKGROUND

With the assistance of counsel, the Debtors filed their Chapter 7 bankruptcy petition on November 27, 2007. Their "Chapter 7 Statement of Current Monthly Income and Means-Test Calculation," also known as the "Means Test" or "Form B22A," was filed the same day as the petition. The Means Test reflected that the Debtors' combined monthly income was approximately $7,922.50. They reported annualized income of $95,070 and a household size of 5. The "Applicable Median Family Income" for an Arizona family of five is $71,950. Therefore, because their income exceeded the "Applicable Median Family Income," the Debtors were compelled to complete the remainder of the Means Test form, reporting their allowed monthly deductions or expenses, in order to calculate their monthly disposable income.

Once the United States Trustee objected to certain expenses, the Debtors further adjusted their monthly deductions or expenses. For instance, the Debtors reported $1,155.92 in "health care" expenses on Line 31 of their Means Test. The Debtors later admitted that this number was in error. In their Response, the Debtors stated that their actual health care expenses, on Line 31, should have been listed in the amount of $267. They also noted that they inadvertently omitted a "health insurance" expense of $411.54 that should have been reported on Line 34.

Of importance in resolving this Motion to Dismiss, the Debtors claimed, on Lines 23 and 24 of their Means Test, certain amounts for "transportation ownership/lease expense[s]" (hereinafter "vehicle ownership expenses"), on each of their vehicles. They claimed $471 for the first vehicle, and $332 for the second. It is undisputed that the Debtors own these vehicles, a 2004 Chevrolet Trailblazer and a 2002 Ford Focus, free and clear of liens.

Another critical expense to the resolution of the current Motion concerns the Debtor's reporting, on Line 26 of their Means Test, of "mandatory payroll deductions" of $606.39 as a repayment of a loan obtained by Ms. Watkins from her 401(k) plan account. The Debtors have admitted that this number is in error. In their Response, the Debtors now state

- 2 -
Case 2:07-bk-06317-SSC   Doc 30   Filed 06/18/08   Entered 06/18/08 16:26:47   Desc
Main Document   Page 2 of 15

that their actual mandatory payroll deduction for the loan repayment is $279.87. Apparently Ms. Watkins originally obtained the loan, so that her husband could have a portion of his lung removed because it was cancerous. At the April 17, 2008 hearing, the Debtors' counsel represented that if the Debtor were to fail to repay the 401(k) loan, Ms. Watkins would not lose her job. However, counsel then inexplicably requested an evidentiary hearing on the issue, stating only that the repayment was somehow "mandatory." The Court again inquired whether a failure to make the payments on the 401(k) loan would result in Ms. Watkins' losing her job, or some other type of punitive action, and asked counsel to make some offer of proof as to what would be considered at any evidentiary hearing. In essence, the Court was trying to determine whether the Debtors had any factual basis, consonant with the Bankruptcy Code, that would support their claim to such a deduction. Counsel conceded that he had no specific evidence to support Ms. Watkins' claim, but he still felt, without further elaboration, that Ms. Watkins had to make the loan repayments.[2] Because it is clear that a cessation in the loan repayments will not result in the Debtor losing her job or any other type of statutory basis to support the deduction, the Court declined to schedule an evidentiary hearing.

Given the recalculation of certain expenses, as set forth above, the Court finds that the Debtors' allowed deductions are substantially reduced. For instance, the Debtors originally calculated that the "[t]otal of all deductions allowed under § 707(b)(2)," reported on Line 47 of the Means Test, was $9,226.85.[3] When the Court corrects the

---

**2.** It is difficult to set a hearing when counsel has failed to provide some factual support for what he is arguing. Although the Court asked if there were any letters, memoranda, or other documents or conversations to support Ms. Watkins' claim, counsel stated that there was nothing tangible.

**3.** The Debtors later filed an "Amended Means Test" with their Response. However, although the Debtors' petition was filed in 2007, the Debtors used the 2008 Means Test form and deductions to create the Amended Means Test. This resulted in many allowed deductions being reported at 2008 allowances, which are higher than 2007 allowances. The 2007 allowances must be used, because the Means Test determination is to be made as of the petition date. Therefore, the Court has used the Debtors' original Means Test for the calculations that follow. However, the Court has updated the revised Means Test using the amounts that the Debtors later reported
(continued...)

mandatory payroll deductions amount, by deleting the incorrect amount of $606.39, but adding in the amount of $279.87 that Ms. Watkins utilizes to repay her 401(k) loan on a monthly basis, the total allowed deductions equal the sum of $8,900.33.[4] When the corrected health care and health insurance amounts are also taken into consideration, the Debtors' total deductions are reduced to the amount of $8,422.95.[5]

If the Court uses the revised figure of $8,422.95, in Part VI of the Means Test, to determine whether the Section 707(b)(2) presumption of abuse arise, the Debtors appear to have insufficient income to create a presumption of abuse.[6] However, if the Debtors have improperly taken the vehicle ownership expenses of $803[7] and Ms. Watkins' 401(k) loan repayment amount of $279.87,[8] then the Debtors deductions of $8,422.95 would be further reduced to $7,339.98.[9] The Debtors would then have $582.52 in disposable income which could presumably be used to pay creditors. The United States Trustee argues the vehicle ownership expenses and the loan repayment must be excluded, hence, creating the requisite presumption of abuse under Sections 707(b)(2).

---

**3.**(...continued)
to be their actual expenses as of the petition date in lieu of several expenses that the Debtors reported erroneously on the original Means Test. The Court has set forth the amounts utilized in its calculations to clarify the matter.

**4.** $9,226.85 - $606.39 + $279.87 = $8,900.33.

**5.** $8,900.33 - $1,155.92 + $267 + $411.54 = $8,422.95

**6.** The Debtors' current monthly income is $7,922.50. If the revised deductions amount of $8,422.95 is subtracted from the monthly income, the deductions exceed the Debtors' income by the amount of $500.45. Obviously when the negative disposable income figure is multiplied by 60, as required by Line 51 of the Means Test, the Debtors initially have no monthly disposable income to report.

**7.** The amount of $471 for one vehicle, and the amount of $332 for the other.

**8.** $803 + $279.97 = $1,082.97.

**9.** $8,422.95 - $1,082.97 = $7,339.98.

- 4 -

The Debtors' Section 341 meeting of creditors was concluded on January 22, 2008. Testimony at this meeting, as well as a review of the Means Test and the Debtors' Schedules, reveal that the Debtors' obligations are primarily consumer debts. The Debtors report that their nonpriority, unsecured debts total the aggregate amount of $130,980.

On January 31, 2008, the United States Trustee filed her "Statement of Presumed Abuse" within ten days of the Section 341 meeting. The Motion to Dismiss was timely filed by the United States Trustee within 30 days thereof. As noted, the Motion to Dismiss focuses on several deductions claimed by the Debtors that the United States Trustee believes must be disallowed. The Debtors do not dispute that for purposes of Section 707, they are "individuals" and that their debts are primarily consumer debts. Because the vehicle ownership expenses and the 401(k) loan repayment amounts dispositively determine whether the Debtors' case must be dismissed or converted to a case under Chapter 13, the Court does not reach the issues concerning the United States Trustee's objections to the Debtors' other deductions. It is also unnecessary to reach the Section 707(b)(3) issue raised by the United States Trustee.

### III. ISSUES PRESENTED

**A. Whether the Debtors are entitled to claim vehicles ownership expenses even though they did not actually pay said expenses as of the petition date.**

**B. Whether the repayment of the 401(k) plan loan by Ms. Watkins is "necessary" to her continued employment and, therefore, constitutes "special circumstances"** *See* **11 U.S.C. §707(b)(2)(B).**

# IV. LEGAL DISCUSSION

**A. The Debtors are not entitled to claim vehicle ownership expenses that they do not actually pay as of the date of the petition.**

The United States Trustee moved to dismiss the Debtors' case pursuant to 11 U.S.C. § 707(b)(1), which provides that, after notice and hearing, the court may dismiss, or, with the debtor's consent, convert to a reorganization chapter, "a case filed by an individual debtor under this chapter whose debts are primarily consumer debts, . . . if it finds that the granting of relief would be an abuse of the provisions of this chapter." Section 707(b)(2)(A) states, in pertinent part, that:

> In considering under paragraph [b](1) whether the granting of relief would be an abuse of the provisions of this chapter, the court shall presume abuse exists if the debtor's current monthly income reduced by the amounts determined under clauses (ii), (iii), and (iv), and multiplied by 60 is not less than the lesser of–
> (I) 25 percent of the debtor's nonpriority unsecured claims in the case, or $6,575, whichever is greater; or
> (II) $10,950.

Hence, under BAPCPA, the court must first ascertain that it is dealing with an individual debtor "whose debts are primarily consumer debts." Next, the court need only find "abuse," rather than the requirement of "substantial abuse," as set forth in Section 707 of the Bankruptcy Code before the amendments enacted by BAPCPA. Finally, in certain circumstances, abuse may be presumed if, after taking into account the debtor's current monthly income and specified expenses, the debtor has sufficient income to make fairly substantial payments to his nonpriority unsecured creditors as outlined in the above computations.

To implement the changes to Section 707(b), Congress developed a Means Test to assist a court and the Office of the United States Trustee in determining whether the presumption of abuse arises in a case. Yet the proper amounts to be claimed on the Means Test, as defined by Subsections 707(b)(2)(A)(ii) and (iii), have been the subject of much controversy. For instance, in Subsection 707(b)(2)(A)(ii)(I), Congress initially focused on

calculations which considered the debtor's monthly expenses as being "the debtor's <u>applicable</u> monthly expense amounts specified under the National Standards and Local Standards, and the debtor's <u>actual</u> monthly expenses for the categories specified as Other Necessary Expenses issued by the Internal Revenue Service for the area in which the debtor resides . . ." (Emphasis added.) In transposing defined terms or standards utilized by the Internal Revenue Service to the new Means Test of Chapter 7 of the Bankruptcy Code, BAPCPA has necessarily created confusion. Indeed debtors have argued that they may claim "applicable monthly expense amounts," such as a "vehicle ownership" expense, even when they do not actually make loan or lease payments. Of course, creditors have disagreed with such an analysis. The resulting litigation has produced a national divergence of opinion. <u>See</u>, <u>e.g.</u>, <u>In re Barraza</u>, 346 B.R. 724 (Bankr. N.D. Tex 2006)(discussing arguments for and against allowing debtors to take a "double dip deduction" in claiming a standard ownership deduction as well as an operating deduction for a vehicle that is neither financed nor leased by the debtor).

The Ninth Circuit Bankruptcy Appellate Panel's decision of <u>In re Ransom</u>, 380 B.R. 799 (9th Cir. B.A.P. 2007) addressed the issue of a "vehicle ownership" expense in the context of confirmation of a plan in a Chapter 13 proceeding. However, the Debtors, in this case, urge the Court to follow the decision of <u>In re Chamberlain</u>, 369 B.R. 519 (Bankr. D.Ariz. 2007) in addition to authority from other circuits, such as <u>In re Fowler</u>, 349 B.R. 414 (Bankr. D.Del. 2006), allowing the vehicle ownership deduction to be taken even though the debtors own their vehicles free and clear of any liens. The United States Trustee argues that this Court must follow the <u>Ransom</u> decision and disallow the ownership expenses claimed by the Debtors because they were not actual expenses that the Debtors were obligated to pay as of the date of filing their petition.

In <u>Ransom</u>, the Panel considered whether a debtor's Chapter 13 Plan could be confirmed when the debtor had claimed a vehicle ownership expense on his Means Test for a vehicle that he owned free and clear of liens. A general unsecured creditor who had objected to plan confirmation argued that the debtor had not committed his full monthly disposable income to the plan, because the debtor had deducted a vehicle ownership expense

– 7 –

when the debtor actually had no such expense as of the petition filing date. The Panel carefully analyzed Section 707(b)(2)(A)(ii), and examined the relevant case law, including the decisions of In re Fowler and In re Chamberlain cited by the Debtors herein. In analyzing Chamberlain, the Panel considered whether the use of the phrase "applicable monthly expense amounts" somehow allowed for a debtor to deduct expenses included in the National or Local Standards set forth by the Internal Revenue Service even though the debtor did not have such expenses. The rationale, argued by the Chamberlain debtors, was that since Congress had utilized the phrases "applicable monthly expense amounts" and "actual monthly expenses," Congress had intended to allow formulaic, as well as actual expenses.

In overruling Chamberlain, the Panel held that the statute was ambiguous and that Section 707, as amended, had to be read in a manner that was consonant with the overall scheme of the Bankruptcy Code. The Panel reasoned that in calculating the Means Test, "what is important is the payments that debtors actually make, . . . because the payments that debtors make are what actually affect their ability to make payments to their creditors." Id. at 807. The Panel also referred to the I.R.S. Financial Analysis Manual, which requires debtors to claim only expenses that they actually have. The Panel concluded that "a debtor ha[d] no right to deduct a vehicle ownership expense when he or she ma[de] no lease or loan payments on the vehicle." 380 B.R. at 808.

At oral argument, counsel for the Debtors argued that since Ransom considered the issue of the vehicle expense in a different context, that of a Chapter 13 plan confirmation, rather than the current Motion, this Court should follow the approach advocated by the Chamberlain Court. Although Bankruptcy Appellate Panel decisions do not have precedential value in every case, a bankruptcy court should follow such decisions unless good reason exists not to. See Bank of Maui v. Estate Analysis, Inc., 904 F.2d 470, 471 (9th Cir. 1990). This Court is persuaded that it should follow the reasoning of Ransom. First, the Panel, in Ransom, specifically discussed, and rejected, the approach taken by Chamberlain. Second, in considering the presumption of abuse under Section 707(b), the Debtors completed the same Means Test that Chapter 13 debtors complete. The point of the Means Test is to

determine the amount of a debtor's monthly disposable income. This determination is the same for both Chapter 13 and Chapter 7 debtors. Given the Panel's rationale and holding in the <u>Ransom,</u> the same reasoning should be applied in this case.

Indeed, this is the same conclusion reached by another Judge in this District. In the decision of <u>In re Sawicki</u>, 2008 WL 410229 (Bankr. D.Ariz., February 12, 2008), the Court had to decide, in the context of a United States Trustee's motion to dismiss a Chapter 7 case, whether the debtor, who owned a vehicle free and clear of liens, was able to claim a vehicle ownership expense. After an excellent discussion of the divergent opinions taken by bankruptcy courts around the country, the Court concluded that <u>Ransom</u> had been decided incorrectly.[10] Additionally, the Court reasoned that the I.R.S. Manual ("IRM") had not been incorporated into the statute; therefore, courts were not bound to follow its guidelines. To reach the holding in <u>Ransom</u>, the <u>Sawicki</u> Court stated that the Bankruptcy Appellate Panel would have had to have adopted "the wholesale language of the IRM." <u>Id.</u> at * 3. However, the <u>Sawicki</u> Court recognized that the Panel's decisions, when "on point" and not "meaningfully distinguishable," should be treated as precedential, and followed, even when the Court might disagree with the Panel's analysis. Although <u>Ransom</u> was decided in a Chapter 13 confirmation context, rather than a Chapter 7 dismissal context, the distinction was not "meaningful," and so the Court followed <u>Ransom</u> in disallowing the debtor's claimed vehicle expense. <u>Id.</u> at * 4.

The Debtors also urge that they should be allowed to take a vehicle ownership expense because their vehicles are older and unreliable. The Court notes that as of the petition date, the Debtors had a five-year-old vehicle; the other was three years old. The <u>Ransom</u> decision also addressed this issue, stating that the debtors might be entitled to an

---

**10.** It reasoned that if Congress had meant for debtors to claim only "actual" expenses, it would have used that word rather than "applicable." Indeed the word "actual" does appear later in the same Subsection. The general rule of statutory construction is that different words should have different meanings. The <u>Sawicki</u> Court held that the Panel's definition of "applicable," as utilized in the Subsection, was without "principled basis." <u>Sawicki</u> at * 4.

1  "older vehicle" expense for vehicles that were older than six years, or that had mileage above
2  75,000 miles. In this case, as of the petition date, neither of the Debtors' vehicles was more
3  than six years old. The Debtors have never alleged that either of the vehicles has high
4  mileage, nor have they requested an evidentiary hearing on this issue. Therefore, the Court
5  declines to allow an "older vehicle" expense to the Debtors.[11]

Because this issue must be determined in favor of the United States Trustee, the amount of $803 claimed by the Debtors as vehicle ownership expenses for two cars must be subtracted from the Debtors' total allowed deductions.[12] Hence, the Debtors' total deductions are then reduced to $7,619.95.[13]

Using the revised figure of $7,619.95, the calculation of Part VI of the Means Test, the presumption of abuse, changes. The Debtors' allowed deduction of $7,619.95 is subtracted from the Debtors' current monthly income of $7,922.50. The Debtors then have the sum of $302.55 in monthly disposable income. When this revised number is multiplied by 60, as required by Line 51 of the Means Test, the resulting yield is $18,153. This number is greater than $10,950. Therefore, the presumption of abuse arises under 11 U.S.C. § 707(b)(2). However, this is not the end of the inquiry.

**B. Repayment of a 401(k) loan is not "necessary" to the continued employment of Ms. Watkins; therefore, the Debtors have not shown a "special circumstance."**

---

**11.** Although the Debtors have never asserted, or requested an evidentiary hearing as to the mileage of their vehicles for purposes of claiming an "older vehicle" expense, the United States Trustee indicated that she would allow the Debtors to claim such an expense if appropriate. The Court notes that when the petition was filed in 2007, the Debtors' 2002 Ford Focus would have been only five years old. Therefore, the only way the Debtors could claim the "older vehicle" deduction would be to show that the vehicle had more than 75,000 miles on it. As noted, the Court is unable to address this issue.

**12.** $471 + $332 = $803. See Factual Discussion supra..

**13.** $8,422.95 - $803 = $7,619.95

Even if the Debtors could claim an "older vehicle" expense, they still face the problem of the claimed 401(k) loan repayment deduction of $279 monthly. Although the Debtors argue that the expense is mandatory for the continued employment of Ms. Watkins, counsel has informed the Court that the Debtor would not be in danger of losing her job or suffer other adverse consequences if she did not repay the loan. As noted previously, because the Debtors have been unable to make an offer of proof creating some type of factual issue to reflect special circumstances, the Court declines to allow the Debtors an evidentiary hearing on this matter.

In any event, given the case law on point, it is clear that the 401(k) loan repayment expense by Ms. Watkins must be disallowed. In the decision of <u>Eisen v. Thompson</u>, 370 B.R. 762 (N.D. Ohio 2007), the Court concluded that such a repayment was not a "debt" cognizable under the Bankruptcy Code, because a "debt" is defined as a "liability on a claim," and a "claim" is defined as a "right to payment." <u>Id.</u> at 768. Therefore, a debt exists only if a creditor has a claim for repayment. Yet in the situation where a debtor has taken a 401(k) plan loan, the plan administrator has no claim for repayment against the debtor or against the estate. Therefore, a 401(k) plan loan is not a "debt" under the Code. <u>Id.</u>; <u>accord</u> <u>Mullen v. United States</u>, 696 F.2d 470, 472 (6th Cir. 1983); <u>In re Esquivel</u>, 239 B.R. 146, 151 (Bankr. E.D.Mich. 1999). The <u>Eisen</u> Court overruled the debtors' argument that their Section 401(k) loan repayment amount could be claimed as a "debt" repayment expense on their Means Test.[14] Also, although the <u>Eisen</u> Court speculated that a debtor might be able to

---

**14.** The <u>Eisen</u> Court noted that a Section 401(k) loan repayment will be excluded from income in an analysis of "disposable income" in a Chapter 13 case. <u>See</u> <u>Eisen</u> at 771, 11 U.S.C. § 1322(f). However, the Court recognized that in Chapter 7, such a loan repayment expense cannot be excluded from income, or claimed as an expense, in the context of the Means Test. Other Courts have considered this anomaly and agree with <u>Eisen</u>. "Section 1322(f) does not have any impact on . . . the means test." <u>Id.</u> n. 14; <u>In re Felske</u>, 2008 WL 339501 (Bankr. N.D. Ohio 2008); <u>In re Johns</u>, 342 B.R. 626, 628-29 (Bankr. E.D. Okla. 2006); <u>cf.</u> <u>In re Skvorecz</u>, 369 B.R. 638 (Bankr. D.Colo. 2007). "If the debtors wish to gain the benefit offered by Section 1322(f) they must seek relief under Chapter 13." <u>Felske</u> at *6. One court believes that the discrepancy is evidence of Congress's "clear . . . intent to channel many debtors toward Chapter 13." <u>In re Turner</u>, 376 B.R. 370 (Bankr. D.N.H. 2007). Because a 401(k) loan will eventually be
(continued...)

include such an expense as an "additional expense or adjustment to current monthly income" if he or she could show that the loan was taken out under "special circumstances," the debtors in Eisen had not made such a showing.

The Debtors, in the case at bar, claim that their 401(k) loan was taken out under "special circumstances," because one of the Debtors required surgery to remove a portion of his lung that had become cancerous. The Debtors argue that 11 U.S.C. § 707(b)(2)(B)(i) allows a debtor to make "necessary and reasonable" adjustments to the income and expenses required on the Means Test by making a showing of "special circumstances, such as a serious medical condition." Although the Debtors have made, perhaps, a prima facie showing of a "serious medical condition," they have not met the other prong of the special circumstances test: to wit, the Debtors have not shown that the repayment of the Section 401(k) loan is "necessary and reasonable." *See* 11 U.S.C. §707(b)(2)(B)(ii)(II). The Court repeatedly asked the Debtors' counsel, at the April 17, 2008 hearing, to make some offer of proof on the matter. Although counsel insisted that the expense was "mandatory," he also conceded, several times, that the Debtor's ability to continue working for her present employer would not be affected by a failure to repay the loan, and he also made no showing that the repayment of the loan was somehow necessary and reasonable.

The Court that decided In re Barraza, 246 B.R. 724 (Bankr. N.D.Tex. 2006) also addressed whether deductions taken from the debtor's paycheck by his employer for repayment of his 401(k) loan were allowable as "Other Necessary Expenses" on the debtor's Means Test. The Court held that such expenses were:

> not a job requirement in the sense that union dues, uniforms, and work shoes are. The consequence of a debtor's failure to comply with the requirement to pay union dues, wear a particular uniform, or wear certain

---

**14.**(...continued)
paid off, more funds may become available to creditors over the course of a Chapter 13 Plan, so debtors are encouraged to attempt to repay creditors to the maximum they can afford rather than remaining in Chapter 7, where the period of bankruptcy supervision is relatively short and the estate is not funded prospectively. Eisen; In re Lenton, 358 B.R. 651, 660 (Bankr. E.D.Pa. 2006).

> shoes is, in all likelihood, loss of employment. By contrast, the consequence of the debtor defaulting on his 401(k) loans is that the loans are treated as taxable distributions.

Id. at 730. Therefore, the "loan repayments [were] not necessary for the production of income. While the debtor may incur a tax penalty if he defaults on the loans, his repayment of the loans is not a condition to his continued employment." Id. The loan repayments, therefore, could not be claimed on the Means Test.

The term "Other Necessary Expenses" is set forth under a different statutory section than are adjustments to income or expenses due to "special circumstances." Compare 11 U.S.C. § 707(b)(2)(A)(ii)(I) with 11 U.S.C. § 707(b)(2)(B)(i). The "special circumstances" claimed under Section 707(b)(2)(B)(i) must be established by showing the criteria listed under Section 707(b)(2)(B)(ii), requiring that the debtor present documentation for the expense or income adjustment, as well as a detailed explanation of the special circumstances that make the expense or income adjustment "necessary and reasonable." However, under both 11 U.S.C. §§ 707(b)(2)(A)(ii)(I) and 707(b)(2)(B)(ii), a debtor must show that the expenses or adjustments to income are both "necessary" and "reasonable." It is a fundamental axiom of statutory construction that "identical words used in different parts of the same statute are presumed to have the same meaning." Emmert Indus. Corp. v. Artisan Associates, Inc., 497 F.3d 982, 987 (9th Cir. 2007) (quoting Sullivan v. Stroop, 496 U.S. 478, 484, 110 S.Ct. 2499, 110 L.Ed.2d 438 (1990)). The Court, therefore, finds that the holding of In re Barraza, that repayment of 401(k) plan loans is not "necessary" if it is not a condition of a debtor's continued employment, is equally applicable to an analysis of the necessity of items claimed under "special circumstances." Even though the Eisen Court speculated that an expense for 401(k) loan repayment might be allowable under a "special circumstances" analysis, the Debtors have not, as noted, met all of the criteria set forth in Section 707(b)(2)(B)(ii)(II). Because the Debtors have failed to explain why the loan repayment expense is "necessary and reasonable," as required by Section 707(b)(2)(A)(ii)(I) or (b)(2)(B)(ii), the Court cannot allow 401(k) loan repayment as an allowed expense.

When the Debtors' $279.87 per month Section 401(k) loan repayment expense is eliminated, as the Court has determined it must be, the Debtors' monthly expenses are reduced to $7,339.98.[15] Now, when the final allowable expenses are subtracted from the income, the Debtors have a monthly disposable income of $582.52. The sum of $582.52 multiplied by 60 is $34,951.20. The Debtors have sufficient disposable income to make payments to their creditors within the context of a Chapter 13 proceeding. Since the Debtors have been unable to show any basis to alter the Court's analysis, as a matter of fact and law, the Court is required to grant the United States Trustee's Motion.[16] The Court will allow the Debtors the opportunity, if they so desire, to convert these proceedings to those under Chapter 11 or 13.

## V. CONCLUSION

Because the vehicle ownership expenses and the 401(k) loan repayment dispositively determine that the Debtors' case must be dismissed or converted, with the Debtors' consent, to a case under Chapter 11 or 13, the Court does not reach the United States Trustee's objections to other deductions claimed by the Debtors on their Means Test. Similarly, the Court does not reach the United States Trustee's Section 707(b)(3) argument. The Court will allow 30 days, from the entry of this Decision on the docket, in which the Debtors may convert their case to a case under a reorganization chapter. If the Debtors fail to convert their case in a timely manner, the Court shall dismiss this case without prejudice.

---

**15.** $7,619.95 - $279 = $7,340.95.

**16.** The parties did not present a stipulation, nor did the Debtors request an evidentiary hearing, on the issue of whether the Debtors would be able to claim an additional amount of $200 per month because the Debtors owned a vehicle with "high mileage." The Court has already found that the Debtors do not have "older vehicles," as defined by the statute, and the Court has insufficient information to conclude that either vehicle has high mileage. Thus, the Court is unable to make further adjustments to the allowed deductions or expenses of the Debtors.

| | |
|---|---|
| 1 | |
| 2 | |
| 3 | DATED this 18th day of June, 2008. |
| 4 | |

*[signature]*
The Honorable Sarah Sharer Curley
United States Bankruptcy Judge

BNC to notice.